BOWERSMITH et al., d.b.a. Parkway Golf Range and Pro Shop, Appellees,

v.

UNITED PARCEL SERVICE, INC., Appellee; Shank, Appellant.

[Cite as *Bowersmith v. United Parcel Serv., Inc.*, 166 Ohio App.3d 22, 2006-Ohio-1417.]

Court of Appeals of Ohio,
Third District, Union County.

No. 14–05–41.

Decided March 27, 2006.

**24**

Diane Kappeler DePascale, for appellees.

Joseph W. Ryan Jr., for appellant.

BRYANT, Presiding Judge.

{¶ 1} The appellant, Aaron M. Shank, appeals from the judgment of the Union County Common Pleas Court granting Civ.R. 11 sanctions against him in the amount of $6,212.50.

{¶ 2} On February 23, 2005, the plaintiffs-appellees, Lori and Scott Bowersmith, d.b.a. Parkway Golf Practice, filed a complaint against defendant-appellee, United Parcel Service, Inc. ("UPS"), alleging breach of contract, negligence, and frivolous conduct under R.C. 2323.51. The complaint resulted from the shipment of three packages,[1] which were delivered to a wrong address, causing the Bowersmiths to suffer damages of approximately $2,500. On March 28, 2005, Shank filed a motion to dismiss for failure to state a claim upon which relief may be granted on behalf of UPS. Pertinent to this appeal, UPS argued that the Carmack Amendment to the Interstate Commerce Act, codified at Section 14706, Title 49, U.S.Code, "occupies the entire field of carriers' liability to shippers for goods transported interstate." Therefore, UPS argued that the federal statute precludes state claims against common carriers, and the Bowersmiths' complaint asserted state claims against UPS. The next day, the trial court granted UPS's motion and dismissed the case.[2]

{¶ 3} On April 1, 2005, the Bowersmiths filed a response to UPS's motion to dismiss, and the trial court filed a journal entry, which set aside the March 29, 2005 dismissal and reinstated the case.[3] In the same journal entry, the court ordered counsel to appear in person for a scheduling conference on April 13, 2005. On April 4, 2005, the Bowersmiths filed a motion for relief from judgment. Shank failed to appear for the April 13, 2005 scheduling conference.[4] At the

---

1. The packages were sent from Marysville, Ohio to Torrance, California.

2. "Defendant's Motion to Dismiss for lack of subject matter jurisdiction is SUSTAINED * * *. *Upon examination of the applicable case law*, this case is dismissed, the subject matter having been pre-empted by applicable federal law, thus divesting this State Court of jurisdiction." (Emphasis added.) J. Entry, Mar. 29, 2005.

3. "A Motion to Dismiss having been filed herein by Plaintiff [sic], citing statutory law which 'pre-empted' this Court's right to entertain jurisdiction, was sustained and this case dismissed on March 29, 2005. Subsequently, this Court has found that the statutory law previously cited by Plaintiff [sic] has been superceded [sic] and the cited reference is no longer the applicable law. Therefore, this Court Orders that the Dismissal Entry be and hereby is set aside and held for naught, and the case be fully reinstated." Journal Entry, Apr. 1, 2005.

4. In the second assignment of error, Shank argues that he was sanctioned based on his failure to appear, and in their briefs, the parties made an issue of whether the trial court sent notice

April 13, 2005 conference, the trial court held some type of proceeding on the record and entered default judgment, sua sponte, against UPS on the issue of liability.[5] On April 14, 2005, UPS filed a memorandum in response to the Bowersmiths' motion for relief.

{¶ 4} The Bowersmiths filed a motion for sanctions against Shank and UPS under Civ.R. 11 on April 19, 2005. In their motion, the Bowersmiths argued that UPS and Shank had acted frivolously by filing a Civ.R. 12(B)(6) motion based on outdated law. The Bowersmiths argued that UPS and Shank should be sanctioned for continuing their argument in favor of dismissal based on the Carmack Amendment. Shank filed a pleading entitled "Defendant's motion to reconsider and set aside default judgment and to reconsider April 1, 2005 entry setting aside dismissal entry." The trial court denied the motion on April 22, 2005, and the parties filed responses and replies on the issue of Civ.R. 11 sanctions.

{¶ 5} The trial court held a hearing on May 2, 2005 to determine damages in the underlying case. In its judgment entry, filed on May 12, 2005, the trial court awarded damages of $2,583.84 to the Bowersmiths and overruled their motion for sanctions because they had not presented expert testimony on the issue of attorney fees. Subsequently, the Bowersmiths filed an amended motion for sanctions pursuant to Civ.R. 11. On August 18, 2005, the trial court granted the motion and held a hearing on September 9, 2005. On September 19, 2005, the trial court filed a judgment entry sanctioning Shank in the amount of $6,212.50. Shank appeals the trial court's judgment and asserts the following assignments of error:

The trial court erred in holding that Appellant, an attorney, violated Ohio Civil Rule 11 for presenting legal arguments amply supported by correctly cited, controlling, current and overwhelming authority.

The trial court erred in holding that Appellant violated Ohio Civil Rule 11 by not appearing at a scheduling conference for which he did not receive notice and when the evidence indicates the trial court never sent notice of the conference to Appellant.

---

and whether Shank received it. However, at oral argument, both parties conceded that the issues of notice and Shank's failure to appear at the scheduling conference are irrelevant because he was sanctioned based on the "frivolous" nature of his filings.

5. "This matter having been set for Scheduling Conference and notice given, Defendant and its attorney failing to appear after citing a statute which had been amended, without citing the amendment, thereby misleading this Court as to its jurisdiction, and further, failing to file an Answer or other pleading after notification of vacation of the Dismissal Entry filed herein, it is Ordered that default judgment as to liability be and hereby is rendered against Defendant." Journal Entry, April 13, 2005.

{¶ 6} An appellate court has jurisdiction to review only the lower court's final judgments. Section 3(B)(2), Article IV of the Ohio Constitution. "For a judgment to be final and appealable, the requirements of R.C. 2505.02 and Civ.R. 54(B), if applicable, must be satisfied." *Walter v. Allstate Ins. Co.*, 9th Dist. No. 21599, 2004-Ohio-3080, 2004 WL 1337860, at ¶ 7, citing *Chef Italiano Corp. v. Kent State Univ.* (1989), 44 Ohio St.3d 86, 88, 541 N.E.2d 64. An order is final and appealable if it "affects a substantial right in an action that in effect determines the action and prevents a judgment" or if it " 'resolves at least one full cause of action in a multiple claim case with an express certification that there is no just reason for delay pursuant to Civ.R. 54(B).' " R.C. 2505.02(B)(1); *Walter,* supra at ¶ 7, quoting *Dellagnese v. First Fed. S. & L. Assn.*, 9th Dist. No. 14809, 1991 WL 21542, at *1. In this matter, the trial court's dismissal was a final, appealable order pursuant to R.C. 2505.02, and the trial court certified it as such by stating in its judgment entry that "[t]his is a final appealable order." J. Entry, Mar. 29, 2005. See, generally, *Schroeder v. Shearson, Lehman & Hutton, Inc.,* 8th Dist. No. 60236, 1991 WL 64318 ("an order that dismisses a complaint is a final appealable order").

{¶ 7} By entering a final, appealable order, the trial court was patently and unambiguously divested of jurisdiction in the underlying case. See, generally, *Schroeder,* supra. Once the case was dismissed, the trial court did not have jurisdiction to set aside the dismissal and reinstate the case. See *Haynes v. Ohio Dept. of Rehab. & Corrs.,* 10th Dist. No. 05AP–78, 2005-Ohio-5099, 2005 WL 2364962, at ¶ 13 (a dismissal "relieves the court of all jurisdiction over the matter and leaves the parties in the same position as if the plaintiff had never commenced the action"). Therefore, the trial court had no jurisdiction in this case after it journalized its judgment entry pursuant to Civ.R. 58(A) on March 29, 2005. However, we note that the lack of jurisdiction does not affect the underlying case, since there has been no appeal as to those issues and UPS has paid a judgment to the Bowersmiths.

{¶ 8} While a trial court will be divested of jurisdiction when it dismisses a case, sanctions are a collateral issue over which the trial court retains jurisdiction. *Burrell v. Kassicieh* (1998), 128 Ohio App.3d 226, 229–230, 714 N.E.2d 442. In this case, the Bowersmiths filed both a motion and an amended motion for sanctions pursuant to Civ.R. 11 based on Shank's frivolous conduct. Civ.R. 11 addresses frivolous claims and states:

The signature of an attorney or *pro se* party constitutes a certificate by the attorney or party that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. If a document is not signed or is signed with intent to defeat the purpose of this

rule, it may be stricken as sham and false and the action may proceed as though the document had not been served. For a *willful violation* of this rule, an attorney or *pro se* party, upon motion of a party or upon the court's own motion, may be subjected to appropriate action, including an award to the opposing party of expenses and reasonable attorney fees incurred in bringing any motion under this rule. Similar action may be taken if scandalous or indecent matter is inserted.

(Emphasis added.) " 'A frivolous claim is a claim that is not supported by facts in which the complainant has a good-faith belief, and which is not grounded in any legitimate theory of law or argument for future modification of the law.' " *Burrell,* supra, 128 Ohio App.3d at 230, 714 N.E.2d 442, quoting *Jones v. Billingham* (1995), 105 Ohio App.3d 8, 12, 663 N.E.2d 657. Whether a party has made a good faith argument under the law is a legal question subject to de novo review on appeal. *Curtis v. Hard Knox Energy, Inc.,* 11th Dist. No. 2005–L–023, 2005-Ohio-6421, 2005 WL 3274990, at ¶ 15, citing *State Farm Ins. Cos. v. Peda,* 11th Dist. No. 2004–L–082, 2005-Ohio-3405, 2005 WL 1538623, at ¶ 28. However, we review a trial court's decision to impose sanctions for an abuse of discretion. *Burrell,* supra, 128 Ohio App.3d at 230, 714 N.E.2d 442, citing *Lable & Co. v. Flowers* (1995), 104 Ohio App.3d 227, 233, 661 N.E.2d 782; *Lewis v. Celina Fin. Corp.* (1995), 101 Ohio App.3d at 464, 471, 473, 655 N.E.2d 1333. An " 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140, quoting *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144. In this case, the trial court clearly abused its discretion by sanctioning Shank.

{¶ 9} In their motion for sanctions, the Bowersmiths argued that "[w]hile the filing of a Rule 12 Motion may have been the conduct of vigorous defense when viewed as a single action, it becomes a pattern of frivolous conduct when coupled with the failure to attend a scheduled hearing and the filing of additional pleadings citing law from the early 1900s in the face of copies of the 1996 statutes." If we were to accept the appellees' argument, every attorney who filed a motion under Civ.R. 12(B) and lost would be subject to sanctions, which makes appellees' argument the closest thing to frivolity in this case.

{¶ 10} In filing the Civ.R. 12(B)(6) motion on behalf of his clients, Shank argued that the Carmack Amendment, codified at Section 14706, Title 49, U.S.Code, preempts state-law claims against common carriers such as UPS. Shank cited precedent established by the United States Supreme Court in the early 1900s, which states that the Carmack Amendment preempts state claims against common carriers. In the motion, Shank argued that the Bowersmiths'

complaint asserted state claims for breach of contract and negligence, which are exactly the types of claims barred by the Carmack Amendment. Although the trial court mistakenly believed that it did not have subject-matter jurisdiction, it dismissed the case, while noting that it had examined applicable case law.

{¶ 11} The next day, and apparently after reading the Bowersmiths' tortured argument against dismissal, the trial court set aside its judgment. The Bowersmiths argued that the cause was properly in state court due to a 1996 amendment to Section 14706. The Bowersmiths argued that "the law is clear. Pursuant to *Title 49* an action may be brought in the state court of general jurisdiction, and under *Title 28* the action shall be brought in state court unless the amount of each individual bill of lading or receipt is in excess of $10,000." (Emphasis sic.)

{¶ 12} We have reviewed Section 14706 and the case law that Shank cited. The cited case law has not been overruled and is therefore proper authority for Shank's motion. A law does not become "bad law" merely because a statute is amended and the case law based thereon is almost 100 years old. Although Section 14706 is a complicated statute, as pertinent to this case, it may be summarized as follows.[6] Section 14706 preempts state-law claims against common carriers. See *Adams Express Co. v. Croninger* (1913), 226 U.S. 491, 505, 33 S.Ct. 148, 57 L.Ed. 314. Likewise, in *Hoskins v. Bekins Van Lines* (C.A.5, 2003), 343 F.3d 769, 777, the court held that the Carmack Amendment preempts all state law claims including

claims for 1) the tort of outrage, 2) intentional and negligent infliction of emotional distress, 3) *breach of contract,* 4) breach of implied warranty, 5) breach of express warranty, 6) violation of the Texas Deceptive Trade Practices Act sections 17.46 and 17.50, 7) slander, 8) misrepresentation, 9) fraud, 10) *negligence* and gross negligence, and 11) violation of the common carrier's statutory duties as a common carrier under state law.

(Citations omitted and emphasis added.) However, federal and state courts have concurrent jurisdiction over *claims brought pursuant to the Carmack Amendment.* See Section 14706(d). Under Section 1337(a), Title 28, U.S.Code, the federal courts have original jurisdiction over Carmack claims with damages exceeding $10,000, and a defendant in state court on a Carmack claim may remove the case to federal court only if the alleged damages exceed $10,000. Section 1445(b), Title 28, U.S.Code.

{¶ 13} Section 14706 of Title 49, Section 1337(a) of Title 28, and Section 1445(b) of Title 28, and the relevant case law clearly allow claims to be filed against a

---

6. For a comprehensive summary of the Carmack Amendment, see Alvarez and Yellin, The Carmack Amendment: Where to Start with a Motor Carrier Cargo Claim, FOR THE DEFENSE, Feb. 2006, at 29.

common carrier in state court, but only if the complaint alleges a claim under the Carmack Amendment, and *not* if it alleges state claims. Shank informed the trial court that state claims are barred by the Carmack Amendment. While he did not mention that the statute had been amended and that a state court may entertain properly pleaded Carmack claims, Shank supported his motion to dismiss a complaint for state claims, citing relevant statutory and case law, which has not been overruled or superseded. During oral arguments, appellees argued that their complaint asserted a Carmack claim and, essentially, that Shank had an affirmative duty to advise the trial court and opposing counsel as to how a plaintiff may successfully file a case against a common carrier. We are aware of no rule of procedural or substantive law or of ethical considerations that would require defense counsel to advise the plaintiff's counsel about how to properly plead the plaintiff's case.[7] Furthermore, appellees' complaint did not assert a claim under the Carmack Amendment. The complaint set forth relevant facts and asserted causes of action for negligence and breach of contract, both wholly state-law claims. While the requirements of notice pleading under Civ.R. 8 are minimal, the defendant must have enough information to answer the complaint, and the complaint in this matter certainly did not notify UPS that it must defend a cause of action brought pursuant to Section 14706.

{¶ 14} Not only was Shank's argument made in good faith, it was correct. Because Shank did not mention the 1996 amendment to Section 14706, the trial court consistently and mistakenly believed that it had been misled as to the law and its jurisdiction in this matter. The trial court abused its discretion by arbitrarily sanctioning Shank based on the belief that it had been misled as to the law governing the case.[8] The first assignment of error is sustained. The second assignment of error is moot, and we note that the appellant apparently withdrew the second assignment of error at oral argument, stating that his failure to appear for the scheduling conference was not the "frivolous conduct" for which he was sanctioned.

{¶ 15} As a final point, we wish to express our dismay with the trial court's sua sponte default judgment in favor of the Bowersmiths in clear violation

---

7. The record does suggest that Shank called appellants' trial counsel and advised him to file the case as a Carmack claim. See Appellant's Br., Nov. 22, 2005, at Ex. 19.

8. The court: "I think it's rather disingenuous for [appellants] to suggest that the Court needs to check every citation to sure it's been properly cited * * *. And I had to do that. You know, here I thought I was dealing with a firm that's very professional in their presentations and so forth. And if they site [sic] me—if they site [sic] me to a case or site [sic] me a statute and they say this stands for the proposition, I expect it to be that. I don't think I have to run around and clean up their work." Appellant's Br., at Ex. 20, 25:4–14. See, also, judgment entries quoted above.

of the Civil Rules. Clearly, none of the rules for imposition of a sanction for contempt of court or for discovery violations apply. Civ.R. 55(A) states:

When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules, the party entitled to a judgment by default shall apply in writing or orally to the court therefore * * *. If the party against whom judgment by default is sought has appeared in the action, he (or, if appearing by representative, his representative) shall be served with written notice of the application for judgment at least seven days prior to the hearing on such application.

{¶ 16} In this case, the Bowersmiths' counsel appeared for a scheduling conference on April 13, 2005. The following pertinent conversation took place on the record at the conference:

Mr. DePascale: I understand. I would make, you know, I would make a motion based on—on what has occurred to this point. You know, as you enter judgment for the plaintiff, but I don't know that you can do that.

The Court: Well, that's just—so that you know, that's exactly what I was—what I was trying to do. Number one, he hadn't filed an answer.

Mr. DePascale: He hasn't filed an answer. He's filed pleadings which but for the fact that everyone has an absolute right to file a Rule 12 motion, would be considered frivolous in this case considering the status of the law. And then he doesn't show up pursuant to court order.

The Court: Yeah.

* * *

The Court: One of the things that I can't do, I don't think—I don't think that I can default him. I don't think—

* * *

Mr. DePascale: I don't have the exact date [for service of the complaint]. I know that—I know he called me and said basically you have no right to file this suit. He then files his motion which obviously was within time and within rule. You sustained it and then overruled it based on what you got in the mail. * * * But the clock's continued to run. * * * So he's out of time on an answer.

The Court: Well, I'll tell you what. I'm going to—on the Court's own motion, the Court will number one, I will recognize that there has been no response since the dismissal entry was set aside. That—and because—and the man didn't appear after ordered to be. So I'm going to find him in default. I'm going to render judgment for you.

{¶ 17} At the time of the hearing, Shank had entered an appearance for UPS by filing the motion to dismiss. Even if the trial court had jurisdiction to vacate

the judgment, a party has 14 days after its Civ.R. 12(B)(6) motion is overruled in which to file an answer. See Civ.R. 12(A)(2). Since setting aside the dismissal overruled the motion under the strange circumstances of this case, Shank had until April 15, 2005, to file an answer. Therefore, as of April 13, 2005, the Bowersmiths were not entitled to move for default judgment.

{¶ 18} Civ.R. 55(A) provides that the *party entitled to judgment shall apply* to the court for judgment. The first mention of default judgment was made at the April 13, 2005 scheduling conference, and Shank had entered an appearance on behalf of UPS by filing the motion to dismiss. Civ.R. 55(A) requires that Shank had to receive *written notice* of the application for default judgment *at least seven days prior to the hearing on the application.* Here, the trial court sua sponte entered default judgment, did not serve Shank with any written notice that it was considering entry of judgment against UPS, and did not hold a hearing to determine whether default judgment was proper. The trial court's sua sponte grant of default judgment in this case was arbitrary and an egregious violation of Civ.R. 55(A).

{¶ 19} Having sustained the first assignment of error, we reverse the imposition of sanctions ordered by the Union County Common Pleas Court.

*Judgment reversed.*

SHAW, J., concurs.

ROGERS, J., concurs in judgment only.